FILED

12/26/2019

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 14, 2019 Session

## ELVIS PRESLEY ENTERPRISES, INC., ET AL. v. CITY OF MEMPHIS, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-0972     Jim Kyle, Chancellor**

———————————————————

### No. W2019-00299-COA-R3-CV

———————————————————

Appellants appeal the trial court's grant of Appellees' Tennessee Rule of Civil Procedure 12.02 motions in this declaratory judgment action. The trial court dismissed Appellants' complaint on the ground that Appellants had no standing to seek a declaratory judgment interpreting a contract, to which Appellants were neither parties nor third-party beneficiaries. We affirm the dismissal of Appellants' complaint for declaratory judgment on the ground that the complaint is barred as *res judicata*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which CARMA DENNIS MCGEE, J., joined. J. STEVEN STAFFORD, P.J., W.S., filed a separate opinion, dissenting.

Clarence A. Wilbon, and J. Bennett Fox, Jr., Memphis, Tennessee, for the appellants, Guesthouse at Graceland, LLC, Elvis Presley Enterprises, Inc., and EPPF, LLC.

Jonathan P. Lakey, and John J. Cook, Memphis Tennessee, for the appellee, City of Memphis.

David Wade, Clayton C. Purdom, and Rebecca K. Hinds, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.

John Marshall Jones, and Bruce D. Brooke, Memphis, Tennessee, for the appellee, Memphis Basketball, LLC.

# OPINION

## I. Background

On June 29, 2001, the City of Memphis ("City"), Shelby County, Tennessee ("County"), and Hoops, LP, the predecessor of Memphis Basketball, LLC ("Memphis Basketball," and together with the City and County, "Appellees") entered into the Memphis Arena Use and Operation Agreement (the "Agreement") for construction and use of the FedEx Forum and the relocation of the Vancouver Grizzlies to Memphis. As is relevant to this appeal, the Agreement provides that ". . . neither the City/County . . . shall . . . design, develop, construct or otherwise fund, provide economic or tax benefits or incentives to . . . any new Competing Facility." The Agreement defines a "Competing Facility," in relevant part, as "any new indoor or covered sports or entertainment arena, indoor or covered performance facility or other indoor or covered facility that (i) could compete with the [FedEx Forum] for the booking of any event, or (ii) has or will have a seating capacity of more than 5,000 persons and fewer than 50,000 persons . . . ."

The City and County have an industrial development corporation, Economic Development Growth Engine ("EDGE"), which, among other things, considers applications of property developers for tax incentive funding ("TIF"). EDGE's decisions require subsequent approval by the Memphis City Council, County Commission, and, ultimately, the State of Tennessee.

In 2014, Elvis Presley Enterprises, Inc., EPPF, LLC, and Guesthouse at Graceland, LLC (together, "EPE," or "Appellants") presented, to EDGE, its Graceland Economic Plan, under which EPE proposed to construct a 450-room hotel, and convention, theater, concert, and museum facilities. EPE was granted a TIF, under which 50% of the excess property taxes over the Base Tax (as defined in EPE's agreement with EDGE) would be captured and allocated to EPE's project.

In 2017, EPE advised EDGE that it would be submitting a supplement to the Graceland Economic Plan, which would amend the scope of the original plan to include construction of a 6,200-seat arena. To finance the arena, EPE sought an adjustment of the TIF to increase the captured and allocated taxes to 65% above the Base Tax (as opposed to the original 50%). While EPE's supplemental plan was pending, it alleges that Memphis Basketball contacted EDGE claiming that the supplemental plan violated the Agreement, which prohibits the City or County from providing economic or tax benefits or incentives for construction of competing facilities.

On November 15, 2017, EPE filed a complaint for declaratory judgment and intentional interference with business relations against Appellees (the "First Complaint"). By order of February 16, 2018, the trial court granted Appellees' separate motions to dismiss the complaint. In relevant part, the trial court held:

- 2 -

> EPE has a legislative and governmental issue but seeks a judicial solution . . . .
>
> In essence, the underlying issue is one of tax divergence, which is a matter for the legislative branch of government in cooperation with the executive branch of government . . . . Before this Court should consider the issue, EPE must have EDGE formally rule that they have rejected the Supplemental Plan and that the City Council and County Commission formally deny EPE's appeal of EDGE's decision . . . .
>
> ***
>
> Therefore, since EPE has not exhausted its administrative remedies, EPE lacks standing to bring this matter before the Court and all three motions to dismiss are hereby GRANTED in their entirety . . . .

On March 7, 2018, the City filed a Tennessee Rule of Civil Procedure 59.04 motion, asking the trial court to amend certain portions of its February 16, 2018 order. EPE did not file a response to the Rule 59.04 motion.

While the City's Rule 59.04 motion was pending, on April 5, 2018, EDGE voted to conditionally approve EPE's supplemental economic plan. Specifically, EDGE approved the supplemental economic plan contingent on

> either (i) a final, binding, non-appealable ruling . . . or (ii) a binding agreement by the parties . . . which binding, non-appealable ruling or settlement agreement has the effect of providing that either (A) the Arena is not a Competing Facility under the Memphis Arena Use and Operating Agreement . . . or (B) the Arena does not violate the Non-Competition covenant in the [Agreement], or (C) that the actions of EDGE, the City of Memphis and County of Shelby, Tennessee in approving the Arena conform with [the Agreement]. . . .

Likewise, on June 4, 2018, the County Commission voted to conditionally approve EPE's supplemental economic plan. The contingencies stated in the County's resolution were identical to those contingencies set out in EDGE's conditional approval, *supra*.[1] On June 12, 2018, the City voluntarily withdrew its Rule 59.04 motion.

EPE did not appeal the trial court's February 16, 2018 order. Rather, on June 29, 2018, EPE filed a complaint (the "Second Complaint") in the trial court. In its Second

---

[1] On May 8, 2018, the City declined to vote on EPE's supplemental economic plan.

- 3 -

Complaint, EPE omitted the intentional interference with business relations claim it had lodged in the First Complaint and asked only for a declaratory judgment to satisfy the EDGE/Shelby County resolution contingency. Appellees filed separate Tennessee Rule of Civil Procedure 12.02 motions to dismiss the Second Complaint on the ground that EPE had no standing to bring a declaratory judgment action on an Agreement to which it was neither a party nor a third-party beneficiary. In the alternative, Appellees' asserted that the Second Complaint was barred as *res judicata*. By order of January 15, 2019, the trial court granted Appellees' motions to dismiss on its finding that EPE lacked standing to bring the Second Complaint. EPE appeals.

## II. Issues

EPE raises the following issues as stated in its brief:

1. Whether the trial court erred in granting Appellees' motions to dismiss and finding that Appellants lacked standing to seek the declaration sought in the complaint where Appellants satisfied the three indispensable elements of standing.
2. Whether the trial court erred in granting Appellees' motions to dismiss and finding that Appellants lacked standing where the County conferred standing on Appellants and authorized Appellants to pursue the declaration requested in the complaint.
3. Whether the trial court erred in denying Appellants the opportunity to conduct discovery on the issue of standing prior to dismissing the complaint.
4. Whether the trial court erred in granting Appellees' motions to dismiss where it did not include any legal basis for the finding that Appellants lacked standing.[2]

Appellees assert that the trial court did not err in granting their Tennessee Rule of Civil Procedure 12.02 motions to dismiss either because EPE had no standing to bring the Second Complaint or because the Second Complaint is barred as *res judicata*.

## IV. Standard of Review

Although the trial court dismissed EPE's Second Complaint on the ground of lack of standing, we begin our analysis by addressing the *res judicata* argument, which was first raised in Appellees' Tennessee Rule of Civil Procedure 12.02(6) motions to dismiss.

---

[2] Tennessee Rule of Civil Procedure 52.01 provides that: "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule[] 12 (i.e., Tennessee Rule of Civil Procedure 12.02) . . . ."

The Tennessee Supreme Court has explained the interplay between the doctrine of *res judicata* and Tennessee Rule of Civil Procedure 12.02 motions to dismiss as follows:

> *Res judicata* is one of the affirmative defenses that must be included in the defendant's answer. Tenn. R. Civ. P. 8.03. However, in appropriate circumstances, it may be raised in a Tenn. R. Civ. P. 12.02(6) motion. For a Tenn. R. Civ. P. 12.02(6) motion to be used as a vehicle to assert an affirmative defense, the applicability of the defense must "clearly and unequivocally appear[] on the face of the complaint." ***Givens v. Mullikin ex rel. Estate of McElwaney***, 75 S.W.3d 383, 404 (Tenn. 2002) (quoting ***Anthony v. Tidwell***, 560 S.W.2d 908, 909 (Tenn. 1977)). In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief. *See **Ragsdale v. Hill***, 37 Tenn. App. 671, 681, 269 S.W.2d 911, 916 (1954) (holding that a demurrer asserting *res judicata* was improper when the petition being challenged did not mention the prior decree); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 713-14 (3d ed.2004).

***Jackson v. Smith***, 387 S.W.3d 486, 491-92 (Tenn.2012). Here, at paragraph 73 of its Second Complaint, EPE acknowledges the trial court's February 16, 2018 ruling dismissing EPE's First Complaint for lack of standing. As such, the applicability of the defense of *res judicata* is "clearly and unequivocally [apparent] on the face of the complaint." We now turn to the substantive question of whether the trial court properly granted the Rule 12.02 motions. The question of whether a claim is barred by the doctrine of *res judicata* or claim preclusion is one of law, which this Court reviews *de novo* on the record. *See, e.g., **Jackson v. Smith***, 387 S.W.3d 486, 491 (Tenn. 2012).

## V. Analysis

"The doctrine of *res judicata* or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." ***Jackson v. Smith***, 387 S.W.3d at 491. Thus, to successfully assert the defense of *res judicata* in a Rule 12.02(6) motion, the defendant must show that the plaintiff's own allegations "clearly and unequivocally" establish the following elements: (1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties or their privies were involved in both suits; (3) that the underlying judgment was final and on the merits; and (4) that the same claim or cause of action was asserted in both suits. *Id*. (citing ***Lien v. Couch***, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)).

Turning to the elements of *res judicata*, EPE acknowledged, in its Second Complaint, that the trial court dismissed its First Complaint on the ground that EPE

- 5 -

lacked standing because it had failed to procure a decision, from EDGE or the Appellees, on its supplemental economic plan. EPE did not appeal the dismissal of its First Complaint. Accordingly, the first element for applicability of the doctrine of *res judicata*, i.e., that the underlying judgment was rendered by a court of competent jurisdiction, is met in this case. Furthermore, it is undisputed that all parties to the Second Complaint were parties to the First Complaint; thus, the second element, i.e., that the same parties or their privies were involved in both suits, is met.

Concerning element three, i.e., that the underlying judgment was final and on the merits, it is well settled that a final judgment is one that "decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." ***Richardson v. Tenn. Bd. Dentistry***, 913 S.W.2d 446, 460 (Tenn. 1995) (internal quotations omitted). In its February 16, 2018 order, the trial court dismissed EPE's First Complaint as to all claims and all defendants. As such, the February 16, 2018 order was final.

Furthermore, a dismissal on grant of a Tennessee Rule of Civil Procedure 12.02 motion to dismiss operates as an adjudication on the merits. Tennessee Rule of Civil Procedure 41.02(3) states that "any dismissal . . . other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits." Guided by this Rule, both the Tennessee Supreme Court and this Court have held that an order granting a motion to dismiss for failure to state a claim upon which relief can be granted under Tennessee Rule of Civil Procedure 12.02(6) is an adjudication on the merits. ***Creech v. Addington***, 281 S.W.3d 363, 378 (Tenn. 2009); ***Boyd v. Prime Focus, Inc.***, 83 S.W.3d 761, 766 (Tenn. Ct. App. 2001) ("An order granting a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted is an adjudication on the merits.") (citing ***Dyer v. Intera Corp.***, 870 F.2d 1063, 1066 (6th Cir. 1989)). Moreover, in Tennessee, if an order "does not specify that [the dismissal] is without prejudice or that it should not operate as an adjudication on the merits, the order should be treated . . . as an adjudication on the merits." ***Id***. at 766. Here, the trial court's dismissal of EPE's First Complaint was for lack of standing; thus, the adjudication does not fall within the exceptions to adjudication on the merits as outlined in Rule 41.02(3), *supra*. Furthermore, the trial court dismissed EPE's First Complaint in full and did not specify that this dismissal should not be treated as an adjudication on the merits. As such, both prongs of the third element for application of *res judicata*, i.e., that the underlying judgment was final and on the merits, are met.

As to the fourth element for applicability of the doctrine of *res judicata*, i.e., that the same claim or cause of action was asserted in both suits, Tennessee has adopted a "transactional" approach for determining whether two proceedings constitute the "same cause of action" for purposes of the fourth element of *res judicata*. ***Creech***, 281 S.W.3d at 379. "Two suits . . . shall be deemed the same 'cause of action' for purposes of *res*

- 6 -

*judicata* where they arise out of the same transaction or a series of connected transactions." **Id**. In other words, "'[w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" **Id**. at 379-80 (quoting Restatement (Second) of Judgments § 24(1)). "'[T]he concept of a transaction is . . . used in the broad sense,' and 'connotes a natural grouping or common nucleus of operative facts.'" **Id**. at 380 (quoting Restatement (Second) of Judgments § 24 cmt. b) (footnote omitted).

In its First Complaint, EPE sought, *inter alia*, a declaratory judgment "declaring that [the Agreement] does not prohibit The City, the County, and EDGE from approving [EPE's request for adjustment of its TIF based on its supplemental economic plan]." In its Second Complaint, EPE asks the trial court for a declaratory judgment that the Agreement does not prohibit EPE from receiving "additional tax incentive funds, or any other tax incentives," to build its proposed concert venue. While the language used in the First Complaint and the Second Complaint differs, the crux of both complaints is whether the grant of TIF for financing of EPE's proposed concert venue would violate the Agreement by and between the Appellees. This Court has stated that, "'The principal test for determining whether the causes of action are the same is whether the primary right and duty or wrong are the same in each case.'" **Gerber v. Holcomb**, 219 S.W.3d 914, 918 (Tenn. Ct. App. 2006) (quoting **Hutcheson v. Tenn. Valley Auth.**, 604 F. Supp. 543, 550 (M.D. Tenn. 1985)). There can be no question that both complaints arise out of the same transaction or series of transactions and seek ostensibly the same relief.

Furthermore, as stated by the Tennessee Supreme Court, "[t]he doctrine of *res judicata* . . . bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, **or could have been**, litigated in the former suit." **Jackson v. Smith**, 387 S.W.3d at 491 (emphasis added). In other words,

> "the phase of the doctrine of *res judicata* which precludes relitigation of the same cause of action is broader in its application than a mere determination of the questions involved in the prior action. The bar of the judgment in such cases extends not only to matters actually determined, but also to other matters which in the exercise of due diligence could have been presented for determination in the prior action."

**Gerber**, 219 S.W.3d at 918 (quoting **Gaither Corp. v. Skinner**, 241 N.C. 532, 85 S.E.2d 909, 911 (1955)). Here, after the trial court entered its February 16, 2018 order dismissing EPE's First Complaint, EDGE and the County conditionally approved EPE's supplemental economic plan. EPE asserts that the fact that EDGE and County made approval contingent on a judicial determination that the TIF for the proposed 6,200-seat arena did not conflict with the Agreement, gave EPE standing, under the Declaratory

- 7 -

Judgments Act, to seek its declaratory judgment in the trial court. Tenn. Code Ann. § 29-14-103 ("Any person interested under a . . . written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a . . . contract, or franchise, may have determined any question of construction or validity arising under the instrument . . . contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."). Indeed, the doctrine of *res judicata* does not prevent courts from reconsidering a claim when "the facts have changed or new facts have occurred" that have altered the parties' legal rights and obligations. ***Creech***, 281 S.W.3d at 381 (quoting ***Banks v. Banks***, 77 S.W.2d 74, 76 (Tenn. Ct. App. 1934)); ***White v. White***, 876 S.W.2d 837, 839-40 (Tenn. 1994). However, these new facts must have occurred after the first adjudication; and they do not include newly discovered evidence of facts that existed prior to the adjudication. ***Regions Fin. Corp. v. Marsh USA, Inc.***, 310 S.W.3d 382, 394 (Tenn. Ct. App .2009).

Although EDGE and the County conditionally approved EPE's supplemental economic plan after the entry of the February 16, 2018 order dismissing EPE's First Complaint, the City filed a Tennessee Rule of Civil Procedure 59.04 motion, which was pending before the trial court at the time these "new facts" arose. Because the doctrine of *res judicata* extends to all issues that "could have been litigated in the first lawsuit," ***Jackson***, 387 S.W.3d at 491, the question is whether EPE could have brought the fact of conditional approval to the trial court's attention in the first lawsuit.

In ***Grisim v. Grisim***, 637 S.W.2d 873, 875 (Tenn. Ct. App. 1982), *perm. app. denied* (Tenn. Aug. 16, 1982) (citing Tenn. R. App. P. 3(a)), the trial court entered an order granting husband's petition for divorce and dismissing wife's counter-petition for divorce. After entry of the order, each party filed a timely motion to alter or amend the trial court's order under Tennessee Rule of Civil Procedure 59.04. *Id*. at 872. The ***Grisim*** Court noted that the filing of the motions to amend preserved the power of the court to revise not only the challenged portion of the order, but also any other aspects of the order, including the dismissal of wife's counter-petition. *Id*. at 875. The court further noted that

> if part of a judgment is challenged by a post-trial motion and the power of the trial court is extended to change such challenged part, then the trial court has not finally adjudicated all of the claims, rights and liabilities; and, the judgment is subject to revision (including setting aside) before entry of final judgment adjudicating all claims, rights and liabilities of the parties.

*Id*. In other words, so long as a post-trial motion is pending, the trial court's order is not final and the proceedings are still pending for purposes of *res judicata*. *See **Brown v. Wal-Mart Discount***, No. 01A01-9705-CV-00217, 1998 WL 44958, at *8 (Tenn. Ct. App. 1998) (holding that "Plaintiff's motion for a new trial effectively preserved the power of the court to alter the judgment. . . ."), *affirmed but criticized on other grounds* by ***Brown***

***v. Wal-Mart Discount***, 12 S.W.3d 785 (Tenn. Jan. 31, 2000); ***General Elec. Credit Corp. v. Allen & Bean, Inc.***, No. 87-165-II, 1987 WL 19311, \*3 (Tenn. Ct. App. 1987) ("[I]t would appear that a motion for new trial would preserve the power of the Trial Court to alter or amend."); ***Mahan v. Mahan***, No. M1999-01366-COA-R3-CV, 2000 WL 1701988, \*8 (Tenn. Ct. App. Nov. 15, 2000) ("One effect of the motion to alter or amend was that it prevented the order divorcing the parties and distributing the property from becoming final.").

Our opinion in ***Regions Financial Corp. v. Marsh USA, Inc.***, 310 S.W.3d 382 (Tenn. Ct. App. 2009), is instructive concerning the application of the doctrine of *res judicata* in cases where the new facts could have been litigated in the first lawsuit. Therein, Regions argued that its claims were not barred by *res judicata* where those claims were based on facts that allegedly had been concealed by a group of defendants referred to as the "Excess Insurers." *Id*. at 386. Regions had filed a federal court case against the Excess Insurers for breach of contract and appealed that case to the Sixth Circuit. While that case was on appeal, Regions discovered facts that "occurred before it filed suit in District Court but which [Regions] claims it had not discovered until it appealed to the Sixth Circuit." *Id*. at 394. Based on the new facts, Regions then filed the state court action asserting similar claims as in the federal court case. *Id*. at 389-90. The state trial court dismissed Regions' claims on *res judicata* grounds. *Id*. at 389. The trial court rejected Regions' argument that Regions could not have relied on these facts in the earlier federal court case because the facts had allegedly been concealed until "several months after the District Court disposed of the parties' post-trial motions and after Regions had filed its appeal to the Sixth Circuit." *Id.* at 394. The trial court held that the relevant facts were "known before the [Sixth Circuit] ruled and there was plenty of time to raise or present those facts to either the District Court or the [Sixth Circuit]." *Id.* (quoting trial court's holding). Specifically, the trial court found that Regions could have raised the new claims in the federal court through a Federal Rule of Civil Procedure 60(b) motion. Having failed to do so, the trial court dismissed the case as *res judicata*. This Court affirmed. *Id.* at 394-95. However, in ***Creech***, which was decided shortly after ***Regions***, the Tennessee Supreme Court cautioned

> There are a number of circumstances in which a second action by a plaintiff against the same defendant might be necessary and appropriate even though the second suit arises out of the same transaction or series of connected transactions as the first suit. *See* Restatement (Second) of Judgments § 26(1). . . . [W]e observe that even where two claims arise out of the same transaction, the second suit is not barred by *res judicata* unless the plaintiffs had the opportunity in the first suit to fully and fairly litigate the particular issue giving rise to the second suit.

***Creech***, 281 S.W.3d at 381-82.

With the foregoing in mind, we turn to the record. From the trial court's February 16, 2018 order dismissing the First Complaint, all parties were aware that EPE's standing was a primary issue. From its averments in the Second Complaint, EPE was also aware that EDGE and the County's imposition of conditions on the approval of the supplemental economic plan could affect EPE's standing in the declaratory judgment action. Specifically, the Second Complaint states that:

> As a matter of law, based on The Graceland TIF, The County Resolution and The EDGE Resolution, including their specific mandates requiring EPE to have this Court interpret The Arena Use Agreement, and The City Council's position that EPE's request is not ripe for consideration because this Court has yet to interpret The Arena Use Agreement, and the impact of The Arena Use Agreement is having on The Graceland TIF and EPE's other legal rights, interest, and privileges, EPE has an absolute right to seek the declaratory relief sought herein . . . .

It is undisputed that EDGE and the County's contingent approvals of EPE's supplemental plan occurred during the time that the City's Rule 59.04 motion was pending in the first lawsuit. Under *Grisim* and its progeny, discussed *supra*, while the Rule 59.04 motion was pending, the trial court's order was not final and the proceedings were still pending. As such, EPE was in a position to file its own Rule 59.04 motion in the first lawsuit to bring these new facts to the trial court's attention. Furthermore, under the holding in *Regions*, even after the City withdrew its Rule 59.04 motion on June 12, 2018, EPE could have filed a Rule 60 motion to bring the contingent approvals to the trial court's attention. EPE did neither of these things. Having failed to avail itself of the opportunity to raise these new facts in the first lawsuit, we conclude that EPE's Second Complaint is barred as *res judicata*. Although the trial court relied on EPE's lack of standing in dismissing the Second Complaint, it is well settled that this Court may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999); *Allen v. National Bank of Newport,* 839 S.W.2d 763, 765 (Tenn.Ct.App.1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991). Our ruling that EPE's action is barred as *res judicata* is dispositive of the case; therefore, we will not address the other issues presented by the parties.

## V. Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Guesthouse at Graceland, LLC, Elvis Presley Enterprises, Inc., and EPPF, LLC, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE