IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2025 Session

## JILL CHERI HOWE v. DONOVAN TODD HOWE

**Appeal from the Chancery Court for Hamilton County**
No. 12-0101     Pamela A. Fleenor, Chancellor
_____

**No. E2024-00912-COA-R3-CV**
_____

This is a post-divorce civil contempt action stemming from a divorce that was finalized in 2014.  At the hearing on the contempt petition in February 2024, the husband moved the trial court to dismiss the petition because the parties' marital dissolution agreement was not in the record.  The trial court granted this motion but later, upon motion by the wife, set aside the 2014 final decree pursuant to Rule 60.01.  The trial court re-entered the final decree, *nunc pro tunc*, with the marital dissolution agreement attached.  From this order, the husband timely appeals to this Court.  We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;
Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

John P. Konvalinka and Lawson Konvalinka, Chattanooga, Tennessee, for the appellant, Donovan Todd Howe.

Jeremy M. Cothern and Samuel R. Rule, Chattanooga, Tennessee, for the appellee, Jill Cheri Howe.

## BACKGROUND

Donovan Todd Howe ("Husband") and Jill Cheri Howe ("Wife") divorced in 2014 in the Chancery Court for Hamilton County ("trial court"). On December 17, 2013, the parties signed and notarized a marital dissolution agreement (the "MDA"), which divides their assets and deals with alimony, among other things. The property settlement portion of the MDA provides, in relevant part, that Husband will pay to Wife, by December 30, 2022, $2.5 million. It also provides that "[u]ntil the earlier of December 30, 2022, or payment of what is due Wife hereunder, Husband will list Wife as the irrevocable beneficiary of life insurance policies that provide not less than Five Million Dollars ($5,000,000)[.]" The trial court entered the final decree of divorce on March 3, 2014. The final decree provides that the trial court reviewed the MDA and found it to be "a fair and equitable division of the parties' assets and liabilities[.]" It further provides that "the [MDA] . . . shall be incorporated by specific reference, with each provision of said [MDA] . . . being made an Order of the Court." The MDA was not attached to the final decree nor was it made a part of the trial court record. However, it is undisputed that the parties proceeded under the MDA, and Husband made a series of payments to Wife according to its terms.

On February 17, 2023, Wife filed a petition for civil contempt alleging that Husband failed to make his final payment to Wife and failed to name Wife as a life insurance beneficiary. Wife averred that the MDA requires both tasks. Husband answered the petition on June 16, 2023. Husband admitted that he had not paid the money due under the MDA and claimed he is incapable of making the payment due to a decline in his business interests. Regarding the life insurance policy, Husband quoted from the language in the MDA and argued that Wife misinterpreted its requirements. Husband also contended in his answer that he could not be found in contempt because the MDA was not attached to the final decree entered in March of 2014. He claimed that although the trial court referred to "a" MDA in the final decree, the trial court did not sufficiently identify such document in said final decree to allow anyone to know which MDA had been adopted.

The parties prepared for a hearing on Wife's petition for contempt, which was set for February 29, 2024. In their respective exhibit lists filed prior to the hearing, both parties acknowledged that the MDA and final decree would be entered as exhibits at the contempt

---

[1] Rule 10 of the Tennessee Court of Appeals Rules provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

hearing. However, the day of the hearing, Husband orally moved the trial court to dismiss the petition because the MDA was not in the trial court's record. The trial court confirmed with the clerk's office that the MDA was not contained in the record and then granted Husband's motion, despite Wife's objection that both parties planned to introduce the MDA as an exhibit. On April 9, 2024, the trial court entered an order explaining that inasmuch as the court was unaware of the MDA's contents, it could not find Husband in contempt.

On April 25, 2024, Wife filed motions for relief pursuant to both Tennessee Rules of Civil Procedure 59 and 60.01. The trial court rejected Wife's argument under Rule 59 but granted the Rule 60.01 motion, finding that Wife's failure to include the MDA with the final decree was an "oversight or omission" contemplated by the Rule, stating: "We just needed it. We didn't have the MDA …. The MDA should have been attached. It wasn't attached." In an order entered June 3, 2024, the trial court denied Wife's Rule 59 motion but granted her Rule 60.01 motion. As relevant, the order provides:

> [T]he Rule 60.01 Motion is granted, and the marital dissolution agreement ("MDA") attached as Exhibit A to the Rule 60.01 Motion and reattached here as Exhibit 2, is a true and correct copy of the MDA between the parties. The MDA attached here as Exhibit 2 is expressly made part of this Court's record and incorporated into the Final Decree of Divorce, nunc pro tunc to March 3, 2014.

From this order Husband timely appealed to this Court.

## ISSUES

Husband raises one issue on appeal:

I. Whether a non-clerical error can be corrected pursuant to Rule 60.01 of the Tennessee Rules of Civil Procedure to permit a document to be attached to a final decree nunc pro tunc more than ten years after the entry of the final decree?

In her posture as appellee, Wife raises four issues:

I. Was the trial court correct when it retroactively appended the signed MDA to the final decree to correct any alleged ambiguity?

II. Even though the MDA was not attached to the final decree, was the decree's reference to the MDA clear enough to allow enforcement of the MDA's provisions via contempt?

- 3 -

III.    Did the trial court err in not allowing Wife to amend her contempt petition to include the MDA?

IV.     Is Wife entitled to her attorney's fees on appeal?

**DISCUSSION**

*A. Rule 60.01*

Husband asserts that the trial court abused its discretion in granting Wife's Rule 60.01 motion and entering the MDA *nunc pro tunc* to 2014. We review a trial court's decision on a Rule 60.01 motion for abuse of discretion. *Jackman v. Jackman*, 373 S.W.3d 535, 541 (Tenn. Ct. App. 2011) (citing *SecurAmerica Bus. Credit v. Schledwitz*, No. W2009-02571-COA-R3-CV, 2011 WL 3808232, at *8 (Tenn. Ct. App. Aug. 26, 2011)).

> A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski* [*v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)] (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). This standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Rather, "under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)).

*Id.* at 541–42 (some bracketing omitted). Rule 60.01 provides that

> [c]lerical mistakes in judgments, orders or other parts of the record, and errors therein arising from oversight or omissions, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders.

Tenn. R. Civ. P. 60.01. The rule is intended to "afford relief in cases in which the judgment or order, either standing alone or when viewed in connection with other portions of the record, shows facial errors arising from oversight or omission." *Cont'l Cas. Co. v. Smith*, 720 S.W.2d 48, 49 (Tenn. 1986) (citing *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976)). A common difficulty in applying Rule 60.01 is discerning the difference "between 'clerical mistakes,' addressed in Rule 60.01, and 'mistake, inadvertence, surprise, or excusable neglect, addressed in Rule 60.02.'" *Anderson v. Anderson*, No. W2007-01220-

COA-R3-CV, 2008 WL 5263384, at *5 (Tenn. Ct. App. Dec. 17, 2008) (brackets omitted). However, "Rule 60.01 has consistently been used to provide relief from judgments flawed by mechanical errors such as a spelling mistake or the insertion of an incorrect number or letter." *Bullington v. Hudson*, No. M1999-02772-COA-R3-CV, 2000 WL 489553, at *4 (Tenn. Ct. App. Apr. 26, 2000); *see also Anderson*, 2008 WL 5263384, at *6 (explaining that Rule 60.01 can be used to correct a judgment where a "judgment [] fail[s] to reflect the trial court's intention"). In *Cont'l Cas. Co.*, for example, our Supreme Court held that Rule 60.01 is properly used to correct a misnomer in a judgment. 720 S.W.2d at 50.

In this case, Appellant argues that the trial court inappropriately applied Rule 60.01 because there is nothing facially wrong with the final decree. On this point, Appellant is correct. The final decree is clear, and there is no allegation that it contains a misnomer, "spelling mistake or the insertion of an incorrect number or letter." *Bullington*, 2000 WL 489553, at *4. Moreover, "the error [Appellee] attempts to correct is not a 'mechanical error of computation or copying,' a facial error evident from the face of the judgment, or any other portion of the record, or an error that causes the judgment to fail to reflect the trial court's intention[.]" *Anderson*, 2008 WL 5263384, at *6. Rather, the final decree is simply missing an attachment, specifically, the MDA. While it is undisputed that a physical copy of the MDA was missing from the record, this omission does not mean the final decree incorrectly reflects the trial court's intentions. This is especially true insofar as the final decree incorporated the MDA entirely. *See Duffy v. Duffy*, No. M2023-00747-COA-R3-CV, 2024 WL 4879137, at *1 (Tenn. Ct. App. Nov. 25, 2024) (holding that a judgment is final for purposes of appeal despite the fact that parenting plan was not attached to final decree, and "declin[ing] to establish a blanket requirement that for an order to effectively incorporate a document, said document must be directly attached to the order").

A missing attachment is not the same as an error in the judgment, and the trial court erred in using Rule 60.01. While the trial court faced a difficult procedural posture, applying Rule 60.01 here is an attempt to fit a square peg in a round hole. Although Rule 60.01 requires us to balance the competing interests of finality and justice, as well as the abuse of discretion standard, Rule 60.01 is inapplicable under these circumstances. Thus, the trial court is reversed.[2]

## B. Contempt

Our inquiry does not end here, however, because Wife also contends that the trial court erred in granting Husband's motion to dismiss Wife's contempt petition at the beginning of the hearing. Whether to hold someone in civil contempt is a matter over which the trial court has broad discretion. *See Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

---

[2] Appellant also argues that the trial court inappropriately entered its order *nunc pro tunc*. Because we conclude that the trial court erred in granting Wife's Rule 60.01 motion, this issue is pretermitted.

Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka*, 249 S.W.3d at 354–55 (footnotes omitted). The disputed element here is whether the MDA is clear, specific, and unambiguous, inasmuch as a physical copy was not attached to the final decree in 2014. A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. *Id.* at 355 (citing *Sanders v. Air Line Pilots Ass'n Int'l*, 473 F.2d 244, 247 (2d Cir.1972)). Orders can "leave no reasonable basis for doubt regarding their meaning." *Id.* at 356 (citing *Int'l Longshoremen's Ass'n, Local No. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). In construing an order for purposes of civil contempt, we use "an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed." *Id.* at 356 (*United States v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir. 2001)). Further, "[a]mbiguities in an order alleged to have been violated should be interpreted in favor of the person facing the contempt charge." *Id.* (citing *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)).

Here, the trial court reasoned that it could not proceed with the hearing because it did not have the MDA to examine. The trial court later explained that the MDA's omission is an injustice to Husband because he was not on notice as to what he was purportedly in contempt of; therefore, the second essential element of civil contempt was lacking. Husband defends this reasoning on appeal, noting in his reply brief that for a litigant to be held in contempt, the order at issue must be sufficiently free of ambiguity. Because the MDA was not attached to the final decree, Husband reasons that he could not be held in contempt. For her part, Wife maintains that the "identity of the MDA incorporated in the [f]inal [d]ecree is clear, specific, and unambiguous."

Husband conflates the requirement of a clear and unambiguous order with the fact that a physical copy of the MDA was not attached to the final decree. These are not the same inquiries. *See Duffy*, 2024 WL 4879137, at *6 ("We [ ] decline to establish a blanket requirement that for an order to effectively incorporate a document, said document must be directly attached to the order."). Husband does not, nor has he ever, contended that he does not know what the MDA says or what it requires of him. Indeed, Husband quoted the MDA's language in his answer to Wife's petition and claimed that he could not satisfy the MDA's requirements because of a decline in his business interests. By Husband's own actions, it is apparent that he understands his obligations under the MDA, which the trial court clearly and unambiguously incorporated into the final decree of divorce. As such,

Husband's argument that the MDA is vague and unclear for purposes of contempt is specious.

Husband also argues on appeal that the trial court did not have a copy of the MDA and, therefore, could not consider whether Husband was in contempt. This is unpersuasive for a few reasons. First, both Wife's petition and Husband's answer to same spell out the disputed portions of the MDA. It is unambiguous from the parties' filings what is in dispute, and Husband argues both sides of the same coin by claiming that he is both unaware of his obligations under the MDA and also not in willful contempt of those same obligations. Second, both parties planned to introduce the MDA as an exhibit at the contempt hearing, as evidenced by their exhibit lists. Again, the fact that the trial court did not have a full copy of the MDA prior to the hearing is simply not the same thing as a finding that the MDA's terms are vague or ambiguous such that Husband lacked sufficient notice of the allegations against him. While we acknowledge again the difficult position the trial court found itself in, and the fact that Wife's trial counsel[3] was dilatory in presenting a copy of the MDA, the better practice would have been to allow Wife's petition to be supplemented so as to avoid this unnecessary litigation and decide the contempt action on the merits. Against this backdrop, the trial court erred in granting Husband's motion to dismiss Wife's petition for contempt.

### C. Attorney's fees

Finally, Wife argues that she is entitled to her appellate attorney's fees.

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. "A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or one that has no reasonable chance of succeeding." *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citing *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977)). On one hand, § 27-1-122 "must be interpreted and applied strictly so as not to discourage legitimate appeals . . . ." *Davis*, 546 S.W.2d at 586. On the other hand, "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Id.* Given the competing considerations, whether to award damages under § 27-1-122 rests soundly within the reviewing court's discretion. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (citing *Whalum v. Marshall*, 224 S.W.3d 169, 180–81 (Tenn. Ct. App. 2006)). In this case, we respectfully decline to award attorney's fees.

---

[3] Wife is represented by different counsel on appeal.

## CONCLUSION

The judgment of the Chancery Court for Hamilton County is reversed, and this case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed one-half to the appellant, Donovan Todd Howe, and one-half to the appellee, Jill Cheri Howe, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE